## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TONIA URBINA-ESCOBAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 13-1226-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's failure to discuss Plaintiff's prescribed use of oxygen, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

## I.    Background

Plaintiff applied for SSI benefits alleging disability beginning January 1, 2003. (R. 13, 105-10). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She claims that the

Administrative Law Judge (ALJ) erred in evaluating her obesity; did not accord sufficient weight to her treating physician's opinion, and placed too much weight on the medical expert's opinion; and failed to discuss her use of oxygen as prescribed, both while at rest and with activity.  The Commissioner argues that the ALJ properly considered Plaintiff's obesity, properly weighed the medical opinions and supported his evaluation with the record evidence, and properly considered Plaintiff's prescribed use of oxygen even though he did not mention that use in the decision.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

2

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

3

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because in his decision the ALJ did not discuss Plaintiff's prescribed use of oxygen.  This error requires remand for the Commissioner to reassess Plaintiff's RFC.  Because assessment of RFC requires consideration of all of the evidence, including the medical opinions and the effects of Plaintiff's obesity on her capabilities, the court will not evaluate the errors alleged by Plaintiff with regard to consideration of the medical opinions or with regard to consideration of obesity.  Plaintiff may make those arguments to the Commissioner on remand.

## II.    Discussion

On June 7, 2011, the ALJ held a hearing at which Plaintiff and a vocational expert testified.  (R. 32-56).  At the end of the hearing, the ALJ determined that he was going to send an interrogatory to a medical expert because the results of Plaintiff's breathing tests "are very close to meeting a listing."  (R. 55).  He expressed his hope that the process would be completed and that Plaintiff would receive the written decision "within the next four to six weeks."  Id.  While awaiting the decision, Plaintiff was admitted to the hospital

4

due to hypoxia on July 20, 2011 and discharged on July 25, 2011. (R. 398-401). At discharge she was prescribed the use of oxygen at a rate of 3 liters per minute at rest and 6 liters per minute with activity. (R. 400). On August 31, Plaintiff's counsel forwarded the records regarding Plaintiff's hospitalization to the ALJ. (R. 397-412). Those records were admitted into the record by the ALJ, and he discussed a pulmonary examination made on July 21, 2011 (during Plaintiff's hospitalization) in his decision. (R. 21) (citing Ex. 23F/7 (R. 403)). The ALJ issued his decision on October 21, 2011. (R. 13-26).

In the decision, the ALJ found that one of Plaintiff's severe impairments is chronic obstructive pulmonary disease (COPD). (R. 15). During his step three evaluation, the ALJ considered whether Plaintiff's condition meets or equals the criteria of either of two respiratory system impairment listings--Listing 3.02, chronic pulmonary insufficiency, and Listing 3.09, cor pulmonale. Id. at 16. He determined that Plaintiff's condition does not meet Listing 3.02 because she "does not have FEV [(forced expiratory volume)] values equal to or less than 1.65; nor chronic impairment of gas exchange; nor significantly abnormal arterial blood gas values," and that her "impairment does not meet [(Listing 3.09)] because she does no have a mean pulmonary artery pressure greater than 40 mm HG, or arterial hypoxia." Id.

In assessing RFC, the ALJ found that Plaintiff must avoid "more than moderate exposure to pulmonary irritants" (R. 18), and he noted:

> While a pulmonary examination conducted July, 21, 2011 indicated lungs
> with decreased air entry bilaterally, there was no evidence of murmur,
> bruits, gallops or rubs, and the heart was regular in rate and rhythm (Exhibit

23F/7 [(R. 403)]).  However, taking into account such symptoms, the claimant should not perform work that requires concentrated exposure to temperature extremes, vibration, work hazards, and more than moderate exposure to pulmonary irritants.

(R. 21).  Thereafter, the ALJ explained:

respiratory examinations were generally within normal limits.  Although records from St. Joseph Hospital dated February 8, 2009 indicated that the claimant presented with complaint of shortness of breath, an x-ray of the chest indicated that heart size was within normal limits with coarse peripheral[1] markings bilaterally.  Findings were suggestive of pneumonia, but the lungs were otherwise clear (Exhibit 16F/7 [(R. 346)]).  In fact, a physical examination conducted as recently as November 19, 2010 indicated that lungs were clear to auscultation, respiratory effort was normal, and the heart was regular in rate and rhythm (Exhibit 15F/6 [(R. 322)]).

(R. 21).  In a final discussion of medical evidence regarding respiration, the ALJ noted:

Although the claimant does have symptoms of chronic obstructive pulmonary disease, there is little evidence of more than a few hospital visits for associated emergencies.  Further, while records from St. Francis Family Medicine Clinic dated February 23, 2010 indicated that the claimant presented with complaint of increasing difficulty breathing, these records further noted that the claimant was not using her CPAP [(continuous positive airway pressure)] machine as much as she should (Exhibit 5F/2 [(R. 262)]).

(R. 22).

As Plaintiff argues, the medical evidence shows that Plaintiff was prescribed the

use of oxygen when she was discharged on July 25, 2011.  (R. 400) ("She is to wear her

_____

[1]The x-ray report to which the ALJ cited actually reads "coarse perihilar markings bilaterally."  (R. 346).  "Perihilar" means "around a hilum."  Dorland's Illustrated Medical Dictionary 1402 (30th ed. 2003).  "Hilum" means "a depression or pit at the part of an organ where vessels and nerves enter."  Id. at 852.

oxygen at 3 liters per minute via nasal cannula when at rest and increase to 6 liters per minute with activity.").  Although this evidence was produced after the hearing, it was produced almost three months before the decision was issued, it was included in the administrative record, and the ALJ cited to a portion of this exhibit in his decision and noted the report of a pulmonary examination completed during this hospitalization.  (R. 21) (citing Ex. 23F.7 (R. 403)).

But, the ALJ said nothing regarding the fact that Plaintiff was prescribed the use of oxygen.  The Commissioner notes the ALJ's discussion of the pulmonary examination (which the ALJ noted showed no evidence of murmur, bruits, gallops or rubs, and that Plaintiff's heart was regular in rate and rhythm, and which the ALJ asserted he took into account in limiting Plaintiff's exposure to pulmonary irritants), and argues that the ALJ properly considered this evidence.  This is so, in the Commissioner's view, because although Plaintiff had this hospital admission with shortness of breath, her respiratory functioning was generally normal, and medical record from October 2011 (after her hospital admission) indicate respiratory functioning was normal and "the evidence does not indicate that she was using oxygen every day."  (Comm'r Br. 11) (citing R. 416-17).

The court disagrees with the Commissioner's argument.  As the Commissioner argues, an ALJ need not discuss every piece of evidence in the record.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  However, he must discuss uncontroverted evidence he chooses not to rely upon, or significantly probative evidence he rejects.  Id. Moreover, he must provide a narrative discussion in his RFC assessment which includes

an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Soc. Sec. Ruling (SSR) 96-8p West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2013). Evidence that Plaintiff has been prescribed the use of oxygen is significantly probative evidence supporting her assertion that she is unable to walk for any significant period of time. But, the ALJ did not discuss that evidence. That is error requiring remand for a proper consideration and discussion.

Plaintiff's use of oxygen also creates an ambiguity regarding her ability to perform the jobs suggested by the vocational expert because the hypothetical questions presented to that expert did not include any mention of oxygen use. But, the ALJ did not explain how he resolved this ambiguity. The Commissioner's attempt to resolve this ambiguity or to explain why this evidence is not significantly probative in the circumstances is without merit. The Commissioner is correct that on October 11, 2011, Plaintiff's respiratory function was described as "normal to inspection" (R. 417), and the treatment note for that date does not indicate that she was using oxygen. (R. 416-18). However, that treatment note does not indicate that she was <u>not</u> using oxygen either. <u>Id.</u> And, the reason for Plaintiff's visit that day was to follow-up for vaginal bleeding. (R. 416). The treatment note does not reveal that there was a need to indicate that Plaintiff was using oxygen that day. Moreover, on the very next day, there is a note indicating that Plaintiff "wants to get a portable O2 machine." (R. 419). On October 20, 2011 Plaintiff returned to the doctor's office complaining of shortness of breath, and that treatment note indicates that Plaintiff "is on 6 L of O2 normally for ambulation and 3 L at rest." (R. 421). The

record does not support the Commissioner's argument, and neither that rationale nor <u>any</u> discussion of oxygen use was presented in the decision.  Remand is necessary for the Commissioner to consider Plaintiff's oxygen use, and explain how that fact affects her ability to work.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

Dated this 29th day of July 2014, at Kansas City, Kansas.

<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**